JOHN WOLSTENHOLME, Respondent, *v.* THE WOLSTENHOLME FILE MANUFACTURING COMPANY, Appellant.

(GENERAL TERM, FOURTH DEPARTMENT, JANUARY 7, 1871.)

The general superintendent of a manufacturing company under a contract giving him entire control of the manufacturing and employes connected therewith, at a stipulated compensation, and in certain contingencies, an interest in the profits of the company, cannot, it seems, be dismissed from

Wolstenhome v. The Wolstenholme File Manufacturing Company.

his employment for any cause not within the express or implied provisions of the contract.

It seems that if the employer, with knowledge of good cause for dismissing his employe, nevertheless enters into a modified contract with him for continuance of the services, such cause cannot thereafter be made the sole ground for his discharge.

In an action by an employe to recover compensation, under a contract for services of which the employer refused to allow performance, a material issue was made as to the plaintiff's fitness and competency for the employment,—*Held*, that letters commending the plaintiff's skill, &c., written before the employment, by third persons in answer to inquiries made, by the defendant at the plaintiff's suggestion, and by the plaintiff himself, were incompetent evidence for the latter; and in view of such issue that their admission, by a referee before whom the action was tried, was error, for which a new trial would be granted.

THIS was an appeal by the defendant from a judgment entered for the plaintiff upon the report of a referee.

The action was brought to recover compensation as provided by contract between the plaintiff and defendant, for the plaintiff's services as general superintendent of the defendant's factory; for damages on account of his dismissal from employment, and for a portion of the earnings of the company.

The complaint set forth a contract bearing date August 27, 1864, which recited the organization of certain corporators under the name of The Wolstenholme File Manufacturing Company pursuant to law, and that such company had been organized as well in the interest of the plaintiff as of the corporators named, provided the plaintiff should be able to earn his portion of capital as thereinafter provided, and which also provided as follows, viz.: " The said Wolstenholme File Manufacturing Company doth, in consideration of the premises, and of the covenants of the said Wolstenholme herein contained, for itself, its successors and assigns, covenant and agree to and with the said James Wolstenholme and his legal representatives, as follows: That the said corporation is formed for the purpose of manufacturing steel files and cast-steel, one or both, as shall be at any time decided upon; and the said James Wolstenholme shall have the entire and full control of

Wolstenholme v. The Wolstenholme File Manufacturing Company.

the manufacturing department thereof, including all the employes connected therewith, as the general superintendent of the manufactory, and for which he shall receive a salary to be fixed by the board of directors, from time to time, but in no case to be reduced below the sum of $2,000 per annum, and that the contract for the superintendency thereof shall continue for the term of five years from the date hereof, unless sooner canceled by the mutual consent of the parties. The said corporation further covenant that they will furnish a cash capital of a least $25,000 as the capital stock of the said company; and if the net earnings of the said company shall equal twenty-five per centum of the said cash capital, commencing from the time the said company shall commence the manufacture of files, there shall each year be declared and paid to the stockholders a dividend from said earnings of ten per centum upon the paid up capital of the company then existing, and one-half of said earnings, after paying the said dividend, shall be paid to the said James Wolstenholme, in the stock of said company; and the capital stock of said company shall be increased for that purpose, and the net earnings of said company shall be thus divided for five full years from the date hereof. Provided always, the amount so increased, issued and delivered to the said James Wolstenholme, or his legal representatives, shall not in the aggregate exceed the sum of $25,000, or the original capital of said company; and when equal to the said sum of $25,000, or the said original capital, shall cease. And provided, also, that the said James Wolstenholme or his legal representatives shall in no case receive any increase of stock from this process in any one year wherein the net earnings of said company shall fail to equal twenty-five per centum on the capital stock at the time paid in; but in such contingency the company may use said earnings for dividend on the capital stock then existing. And provided, also, that this provision and this contract and agreement shall cease and end in five full years from the date when the said company shall begin manufacturing, even though the said James Wolstenholme shall not have suc-

ceeded and earned his contemplated capital stock; and when this contract is fulfilled, either by the said James Wolstenholme having as herein provided earned the amount of capital stock aforesaid, or by its own limitation, then and thereafter all earnings shall be the property of the stockholders pro rata to their stock from time to time existing.

"And the said James Wolstenholme, in consideration of the premises, and the foregoing covenants and agreements, hereby covenants and agrees to and with the said The Wolstenholme File Manufacturing Company that they shall have the use of his name for their said manufactory during the term of their corporate existence. And also, that he will devote his time and experience to said company's benefit, and in their interests, to the best of his knowledge and ability, as said superintendent; and that the said "The Wolstenholme File Manufacturing Company" shall have the full and unlimited use for itself, in its own establishment, of all machines or inventions which he the said James Wolstenholme either has made or invented, or hereafter may invent or make, and all inventions of which he is or may be hereafter the owner, in any way appertaining to the manufacture of files or of steel; it, the said The Wolstenholme File Manufacturing Company, being at the expense of making all required models, and of obtaining all patents appertaining to such inventions as they may desire to use, in the name of said James Wolstenholme, and other ways, except for the use of the said corporation, the said patents shall be the property of the said James Wolstenholme and his legal representatives. And it is further mutually understood and agreed, that nothing herein contained shall be so construed as to prevent or debar the said The Wolstenholme File Manufacturing Company, its successors or assigns, from dissolving the said corporation, and surrendering its said franchise at any time that they may elect so to do, and the doing of the same shall in all particulars cancel this said contract: Provided always, that whenever the corporators of said company shall so determine to do, they shall, before proceeding to execute such determina-

tion, notify the said James Wolstenholme, or his legal representatives, of their intention to dissolve the said company, and said notice shall be in writing, and from the receipt of such notice the said James Wolstenholme and his legal representatives shall have two months time in which to pay to the stockholders of the said The Wolstenholme File Manufacturing Company the full amount of their stock, at par value, in legal money of the United States; and they, the said stockholders, shall receive the same when tendered, and transfer all of their said stock to the parties so tendering the money.

"And it is expressly agreed and understood that this agreement shall cease and determine in case of the death of the said James Wolstenholme, and in case the said James Wolstenholme shall cease to act as superintendent as aforesaid."

The complaint further stated that the said contract had been, on the 15th of May, 1866, modified by another written contract between the plaintiff and defendant, and set forth at length, whereby it was agreed, among other things, as follows, viz.: "Instead of distributing the profits of the said company in the manner provided for in the said agreement, there shall be paid each year to the stockholders of the said company, either in stock or in cash, as said company shall elect, seventeen and one-half of one per centum upon the capital stock of said company at the time actually existing and paid in; and if the net profits of said company shall exceed seventeen and one-half of one per centum upon the said capital stock, there shall be issued to the said James Wolstenholme each year the stock of said company to an amount equal to the profits of the said company over and above the said seventeen and one-half of one per centum until the said James Wolstenholme shall receive seven and one-half of one per centum upon the capital stock of said company then existing and paid in; and if the net profits of the said company shall exceed the said seventeen and one-half of one per centum, and the said seven and one-half of one per centum, such

excess shall be divided equally between the said company and the said James Wolstenholme.

"Also that the original contract between the parties hereto, bearing date the 27th day of August, 1864, is to stand unchanged as respects the period of its continuance, the gross amount of capital stock which the said Wolstenholme shall be entitled to by virtue thereof, the salary of the said James Wolstenholme, and as respects all other matters not in conflict with the provisions hereof."

The plaintiff proved the contract as laid in his complaint, and it appeared that the defendant commenced manufacturing and the plaintiff to act as superintendent on the 24th May, 1865, and continued to act in that capacity until the modified contract, and after that time until the 22d October, 1866, when the defendant dismissed him from its employ and refused to allow him to discharge such duties, although he was ready and willing and offered so to do. It also appeared that the plaintiff's salary, which had been fixed at $2,000, had been paid in full to the time of his discharge, but unpaid otherwise, and that there were no net earnings of the company during the first year, and not sufficient the ensuing year to amount to seventeen and one-half per cent on the capital stock of the defendant actually paid in.

The plaintiff claimed to have faithfully devoted his time and experience to the service of the defendants, and to have been dismissed without just cause. These allegations the defendant denied and disputed, and averred that the plaintiff was unfit to superintend its manufactory, and entirely incompetent to manage its operations and to conduct the business economically or successfully; that he was visionary, wasteful and extravagant, and failed in judgment and in qualifications for business, &c., &c. Evidence was given upon these issues, and also going to show that the plaintiff was extravagant and visionary in certain plans adopted by him in reference to improvements in the manufactory; that he was irascible, and had difficulties with the men, that he failed to control them, and that there was difficulty in obtaining employes in conse-

quence; also that he put up imperfect files, and sent them out from the factory as perfect.

The referee found that "the plaintiff erred in judgment as to some of his calculations;" that he was hot-tempered and imperious, and had frequent disturbances with the defendant's employes from about the time he commenced manufacturing during the first year, and occasionally afterward, until about the time he was discharged by the defendant, and that these disturbances were somewhat aggravated by his irascible and imperious temper; that the principal part of these disturbances occurred during the first year, and that when the modified contract was entered into, the plaintiff's peculiarities of temper and method of treating the employes, and his qualities and capabilities as superintendent were known by the defendant. And he decided, as matter of law, "that the plaintiff's failure of judgment and his imperious and irascible temper were not justifiable cause of discharge; that in these respects "the defendant's duty was to inform. itself before hiring;" that it did not appear that the plaintiff was discharged either because of any failure in judgment, or infirmities of temper, or of any disorganization and trouble in the shop growing out of the manner in which the plaintiff treated the workmen; that occasional complaints were made by customers that soft files were found in packages which had been sold as perfect, and the packages were returned for that reason; that about the time of plaintiff's discharge, Fletcher, one of the employes of defendant, whom the plaintiff had employed as a prover of files before they were wrapped up, claimed that the plaintiff was directing files to be passed as perfect which in fact were soft, and therefore not perfect; that this claim was brought to the attention of Mr. Truscott, the president of defendant, and he had one or more interviews upon the subject with the plaintiff, who denied that he had directed any soft files to be passed as perfect, or to be included in the packages of perfect files, and it was not proved in the case that the plaintiff had so directed, or that he proposed to pass such or any soft files as perfect, or to have any of them

included in the packages of perfect files; that within a few days after the talk with Mr. Truscott, the plaintiff was discharged, and notified by writing of such discharge, but no cause for such discharge was assigned.

The referee decided, as matter of law, that the plaintiff was entitled to recover from the defendant his salary at the rate of $2,000 a year after his discharge, from the date of his discharge to the commencement of this action.

The referee further decided, as matter of law, that the plaintiff's failure of judgment and his imperious and irascible temper were not a justifiable cause of discharge; that in these respects the defendant's duty was to inform itself before hiring. But he also decided that even if such was not the duty of the defendant, the evidence did not disclose an unfitness in the plaintiff for his position, either because of failure in judgment or imperiousness and irascibility of temper which warranted his discharge.

The referee further decided, as matter of law, that the defendant having entered into the modified contract with the plaintiff, after it had discovered the alleged unfitness of the plaintiff to be superintendent, because of failure in judgment and imperiousness and irascibility, was thereby precluded from thereafter discharging the plaintiff therefor.

The referee further decided, as matter of law, that the defendant had failed to establish a justification for discharging the plaintiff.

And he directed judgment in favor of the plaintiff in accordance with his finding, and judgment was entered accordingly.

The defendant duly excepted to the several rulings of law and fact of the referee, and to his direction for entry of judgment, and appealed, making a case containing the evidence and exceptions.

*John Ganson*, for the appellant.

*Benjamin H. Austin*, for the respondent.

Wolstenholme *v.* The Wolstenholme File Manufacturing Company.

Present—MULLIN, P. J., and JOHNSON, J.

By the Court—JOHNSON, J.   On a careful examination of all the testimony before the referee upon the trial, and comparison of the conflicting evidence upon the various points at issue, I have become satisfied, contrary to my impressions on the argument, that the referee was justified in finding as he did that the plaintiff was discharged from the defendant's service "without just cause."   The first contract was entered into between the parties on the 27th of August, 1864, and was for the term of five years' service by the plaintiff, unless sooner terminated by the mutual consent of the parties. Under this contract the plaintiff commenced superintending and manufacturing for the defendant some time in May, 1865, and continued for about one year, when, on the 15th of May, 1866, a new contract was entered into between the same parties, modifying and changing in some respects the first contract, in respect to the plaintiff's compensation, but not materially in other respects.   Under this last contract the plaintiff continued his services until the 22d of October, 1866, when he was discharged by the defendant's officers and stockholders, and dismissed from defendant's service.   No cause was assigned in the notice of dismissal.   But it was not necessary that any cause should be assigned.   If a good and sufficient cause in fact existed, the defendant was justifiable in dismissing the plaintiff, without assigning any reason therefor. The rights of the respective parties rested in the contract which they had deliberately and carefully drawn out and entered into.   The plaintiff was something more than the mere servant of the defendant.   He was the defendant's chosen foreman and superintendent, and by the terms of the contract was to "have the entire and full control of the manufacturing," "including all the employes connected therewith, as general superintendent of the manufactory."   This general power was also by the terms of the same contract coupled with an interest in the profits of the business, by way of further compensation, in certain specified contingencies.   He

was a party to an express contract, and whatever may have been his strict legal relation to the defendant, it is clear, I think, that he could not be dismissed and discharged from the service which he had undertaken to perform, with impunity, unless he had been guilty of some substantial violation of the express or implied provisions of that contract.

But, even if he was nothing more than a mere servant, acting under the general implied obligation of such a relation, upon the finding of the referee he was improperly discharged. It is clear enough that the defendant could not go back of the date of the last contract to find a cause for his dismissal. All previous causes for dismissal, if any existed, were merged in and canceled by the new contract. The referee has found, and as I think properly, that the infirmities and outbreaks of temper and abuse of the hands by the plaintiff, now complained of, mostly occurred before the last contract was entered into, and that since that time he has not been guilty of any such conduct in that regard as would justify the defendant in dismissing him and depriving him of all the benefits and advantages secured to him by his contract.

Indeed the defendant did not dismiss him upon any such ground or for any such cause as the referee has found, and as plainly appears from the evidence, but for a reason wholly different.

The new contract certainly did not give to the plaintiff any right to pursue an improper course of conduct, even if he had been guilty of it before under the other contract, or because he had been guilty of it formerly.

It did not operate as a license on the part of the defendant to the plaintiff, to violate his duty under the contract to his employer. And I do not understand the referee as holding any such principle. But the fact that the defendant entered into a second contract with the plaintiff for the same service after the first year, coupled with the fact, that he was dismissed for another and different cause, may be properly referred to as strong and convincing evidence that this conduct was not regarded by the defendant in the same light

then, that it is claimed to be now. It suggests very strongly, the probabilities of interested after-thought, exaggerating eccentricities of conduct into improprieties and errors of undue magnitude and proportions. The other ground on which it is claimed the defendant had the right to discharge, and upon which they did, in fact, dismiss and discharge the plaintiff, that of packing and sending out imperfect files to the injury of the business, the referee has found did not exist in fact. The evidence upon this subject was quite conflicting; but the referee had the right to give credence to the plaintiff's testimony on the subject. He was certainly, according to all the testimony, the most competent judge, and had no interest in injuring the business while he remained there. His testimony, if credible, is entirely satisfactory on that question. He was before the referee who had the best opportunity of judging of his competency and honesty. Under such circumstances, this court will not interfere to set aside the finding of a referee on a question of fact, unless the error is quite apparent. But I am wholly unable to see how the ruling of the referee receiving the letters written by third persons to the witness Dorsheimer and to the plaintiff, in evidence in the plaintiff's favor, can be justified. They were letters, generally commendatory, of the plaintiff's skill as a manufacturer of files; of the excellence of the articles formerly manufactured by him, and of plaintiff's character for integrity.

Dorsheimer was, as it appears, one of the defendant's principal stockholders, and the plaintiff had given him a reference to some of these persons who had written a portion of these letters in answer to inquiries from Dorsheimer, respecting the defendant's skill, the character of his work, &c. The other letters were written to the plaintiff himself. The fact that these references had been given by the plaintiff and answers received to the inquiries was drawn out by the plaintiff on the cross-examination of Dorsheimer. The plaintiff then offered the letters received by Dorsheimer in answer to his inquiries, and also those received by himself as

evidence, and they were received against the defendant's objection. I am not aware of any rule of evidence upon which this ruling can stand. These letters were the mere expressions of opinions of third persons, on the subject of the reputation of the plaintiff as a manufacturer, and of his previous work. It is claimed by the plaintiff's counsel, that it was competent, and was within the issue made by the defendant's answer. The defendant had set up in the answer by way of defence, amongst other things, that the plaintiff was unfit to superintend the business of manufacturing files. and was entirely incompetent to manage the operatives, and to conduct the business economically, or successfully.; that he was visionary wasteful and extravagant, and failed in judgment and business qualifications. The questions raised by this part of the answer, were in respect to the plaintiff's fitness and competency in point of fact, and not in respect to his reputation for skill or fitness to manage and carry on business successfully as in respect to his skill as a manufacturer. This evidence was entirely incompetent on those questions. It was the mere declarations of third persons, and nothing more than hearsay. As the referee held it competent evidence against the defendant's objection, it is impossible to say that he was not, and could not have been influenced by it. The presumption is, that it had its legitimate influence, as pertinent, and competent evidence. It is quite apparent, that as material and competent evidence, it bore directly upon the question whether the defendant had good and sufficient cause for discharging the plaintiff. For, although the plaintiff had a contingent interest in the earnings and profits of the enterprise, still he was not a partner with the defendant, and the business was not his business. He was, in fact, an employe, and his interest in the business was by way of compensation only. It was clearly an implied part of his contract and undertaking, that he possessed the requisite skill and fitness for the superior position and authority, which was secured to him by such contract. In all other respects, I am of the opinion that the rulings and decisions

of the referee were correct.   But for this error the judgment must be reversed, and a new trial awarded.

Judgment reversed, new trial granted, costs to abide event.

Mr. Justice TALCOTT, having been engaged as counsel on the trial, did not sit.